Case 3:24-cv-00067   Document 17   Filed on 06/07/24 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
June 07, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:24-cv-67

OLIN CORPORATION, *PLAINTIFF*,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL UNION NO. 564, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is Olin Corporation's motion for summary judgment. Dkt. 13. The court will grant the motion.

## I. Background

Robert Brown worked as an operator at Olin's chlorine plant in Freeport. Dkt. 13 at 7. Brown, like all other operators in his department, was represented by International Union of Operating Engineers, Local 564 (the "Union"). *Id.* at 8. In November 2022, Olin investigated claims that Brown made sexist comments towards female co-workers. *Id.* at 11. After Olin found the allegations to be true, they suspended Brown for five days and ordered

him to privately apologize to his co-workers. *Id.* The Union took no issue with this discipline. *Id.*

During a private apology to a female co-worker, Brown told his co-worker that the union steward, Robert Bell, leaked confidential information regarding the now-closed investigation. *Id.* Later, at an operators-only meeting, Brown again confirmed that Bell had told him confidential information regarding Olin's investigation. *Id.* Growing concerned with Bell's integrity as union steward, several operators reported these allegations to Olin. *Id.* at 12.

Olin then opened a new investigation, this time to investigate Bell's alleged dissemination of confidential information during the Brown investigation. *Id.* Olin interviewed Brown as part of the Bell investigation. *Id.*

In his official interview, Brown recanted his previous allegations. *Id.* He denied telling his female co-worker that Bell had leaked information, and he likewise denied alleging the same at the operators-only meeting. *Id.* After interviewing thirteen witnesses, Olin concluded Brown was deliberately dishonest in the course of the Bell investigation. *Id.* at 13. Brown was then terminated for violating Olin's Work Rules and Code of Conduct. *Id.* One week later, the Union alleged Brown's termination was "unjust and untrue."

Dkt. 13-1 at 5. Pursuant to Article XIX of the parties' Collective Bargaining Agreement ("CBA"), the grievance proceeded to arbitration. Dkt. 14 at 7.

The singular issue to be decided at arbitration was whether Olin had "just cause" to terminate Brown. Dkt. 13-1 at 1. The arbitrator concluded that (1) there was "more than sufficient" evidence to show Brown was dishonest and (2) dishonesty alone was sufficient to support termination under the CBA. *Id.* at 9. However, the arbitrator also concluded that "[d]ue process required that [Brown] be told that [Olin] believed he was dishonest during the investigation and given the opportunity to respond to that charge." *Id.* at 10. As Brown was afforded no such opportunity to "tell his side of the story," the arbitrator concluded Olin did not afford Brown adequate due process. *Id.* And without due process, Olin did not have the required "just cause" to terminate Brown. *Id.* The arbitrator ordered Brown be reinstated with backpay. *Id.*

Olin then filed this action to vacate the arbitration award and now moves for summary judgment. Dkts. 1, 13.

## II. Legal Standard

Judicial review of an arbitration decision that arises from the terms of a CBA is narrowly limited. *Beaird Indus. v. Local 2297, Int'l Union, UAW*, 404 F.3d 942, 944 (5th Cir. 2005). "As long as the arbitrator is even arguably

construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "If there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003).

However, "where the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989). In such cases, "vacation or modification of the award is an appropriate remedy." *Id.*

## III. Analysis

The parties' dispute over the arbitrator's award is narrow. Neither the parties, nor the arbitrator, contest that (1) there was sufficient evidence to conclude that Brown was dishonest, and (2) dishonesty alone was adequate grounds for termination. Dkts. 13-1 at 9, 14 at 9. Instead, the core dispute is whether the arbitrator exceeded her jurisdiction by considering extra-contractual due-process concerns within her "just cause" analysis.

The arbitrator was tasked with deciding whether "just cause" existed to terminate Brown, yet "just cause" was an undefined term within the CBA. Dkt. 14 at 8.[1] When a term is left undefined, an arbitrator is well within her authority to construe what it means. *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000). More specifically, an arbitrator is well within her authority to include, as a general matter, due-process considerations within a "just cause" analysis. *See Refresco Beverages US Inc. v. Int'l Bhd. of Teamsters Loc. 997*, 2021 WL 5908988, at *4 (N.D. Tex. Dec. 14, 2021) (upholding arbitration decision on due-process failures); *Chauffeurs, Teamsters and Helpers Local Union No. 878 v. Coca-Cola Bottling Co.*, 613 F.2d 716, 717 (8th Cir. 1980) (same). Nevertheless, an arbitrator's endeavor to give shape to undefined terms, including "just cause," must "draw its essence from the contract and cannot simply reflect

---

[1] Article XXXII of the CBA states:

> The COMPANY, for just cause, has the right to discipline and discharge; require employees to comply with COMPANY policies, rules, procedures, regulations and practices; to require interactive cooperation with other employees and to refrain from engaging in any type of insubordination or misconduct. Progressive discipline will be used for non-significant offenses.

Dkt. 13-1 at 55.

the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

In *American Eagle Airlines, Inc. v. Air Line Pilots Association*, the Fifth Circuit addressed the precise problem at issue here: whether an arbitration panel "could properly consider any supposed procedural violation by [the employer] in its 'just cause' analysis." 343 F.3d 401, 408 (5th Cir. 2003). The court's analysis began with the "relevant language" of the CBA to discern whether the employer's procedural failures "constituted a violation *of the CBA*." *Id.* at 406 (emphasis added). After analyzing the provisions of the agreement, the court concluded the employer committed "no procedural violation of the CBA." *Id.* at 407. "This reason alone," the court continued, "is sufficient to conclude that the [arbitration panel] erred if it considered such conduct either in its just cause calculus or to mitigate a finding of just cause." *Id.* Stated another way, if a procedural defect is not, at least arguably, a violation of the CBA itself, an arbitrator should not consider it within the just-cause analysis.

The cases cited by the Union only underscore this rule. The Union cites to three cases in which an arbitrator held a due-process violation undermined the employer's just-cause determination, but, critically, the procedural defect in each case was a violation of an explicit term of the CBA.

Dkt. 14 at 15–17 (citing *Teamsters Loc. Union No. 284 v. Maremont Corp.*, 515 F. Supp. 168, 174 (S.D. Ohio 1980) (upholding arbitrator's award when employer failed to have a formal conference prior to termination as explicitly required by CBA); *Refresco Beverages* 2021 WL 5908988, at *4 (upholding arbitrator's award when employer failed to adhere to investigation and timeliness standards explicitly required by CBA); *Chauffeurs,* 613 F.2d at 721 (upholding arbitrator's award when the due-process concern "drew its essence" from the language of the CBA)).

In contrast, the due-process considerations in this case are wholly untethered to the language of the CBA. The arbitrator's award does not once cite to any provision of the CBA. *See* Dkt. 13-1 at 1–10. Nor does the CBA refer to, or implicate, in any way, the right of an employee to be heard before termination. *Id.* at 55. The award was not inspired by the language of the specific CBA at hand. Rather, the arbitrator explicitly concluded that it was her "personal position" that, as a general matter across all "private sector employment," due process requires "the employee an opportunity to tell his or her side of the story." Dkt. 13-1 at 9. This conclusion is unrelated to any text or provision found in the CBA.

The arbitrator's award is not "rationally inferable from the contract." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215,

1218 (5th Cir. 1990) (citations and internal quotation marks omitted). It is not "derived from the wording or purpose of the contract." *Id.* While an arbitrator has freedom to interpret undefined terms, that interpretation must "draw its essence from the CBA." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005). Because the arbitrator added a component of due process that was wholly uninspired by the text or structure of the CBA, the award must be set aside. *Am. Eagle Airlines*, 343 F.3d at 408.

* * *

For the reasons stated above, Olin's motion for summary judgment is granted. Dkt. 13. The arbitration award issued on January 15, 2024, is vacated. A final judgment will issue separately.

Signed on Galveston Island this 7th day of June, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE